UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIMENSIONAL TECHNOLOGY
INTERNATIONAL, INC.,

    Plaintiff,

v.

FA KELLNER SOFTWARE,
and BERND KELLNER,

    Defendants.
                                 /

Case No. 07-cv-14232

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING, IN PART,
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** (docket no. 8)

This is an action in breach of contract and unjust enrichment brought against a German corporation and its owner. The matter comes before the Court on Plaintiff's motion for default judgment (docket no. 8). The Clerk of the Court entered defaults against Defendants on April 30, 2009. Plaintiff moved for default judgment shortly thereafter. The Court held a hearing on the motion on February 2, 2010, after which the Court requested supplemental briefing with respect to Plaintiff's measure of damages. The Court has reviewed Plaintiff's supplemental brief and is now ready to rule.

**BACKGROUND FACTS**

The following is alleged in the complaint. Plaintiff Dimensional Technology International, Inc. ("DTI") is a Michigan corporation with a principal place of business in Michigan. DTI is involved in the manufacturing industry. It uses various "three-dimensional optical metrology technologies to help companies improve the quality and efficiency of their manufacturing processes." Compl. ¶ 6. Defendant FA Kellner Software ("Kellner Software") is a German corporation with its principal place of business in Gottingen, Germany. Kellner

Software conducts business in the Metro Detroit area. It develops and sells software for multi-dimensional optical metrology technologies such as those used by DTI. Defendant Bernd Kellner ("Kellner") is an individual residing in Gottingen, Germany. Although the complaint is not clear on this point, it appears that Kellner is the owner or president, or is otherwise in control, of Kellner Software. Subject-matter jurisdiction is found in diversity of citizenship – the parties are diverse and the amount in controversy is alleged to exceed $75,000. *See* 28 U.S.C. § 1332.

In April 2006, DTI and Kellner Software (with Kellner acting on its behalf) bargained for and entered into a oral agreement. Negotiations, offer, and acceptance took place over the telephone while DTI's president, Dieter Gerlach, was in DTI's Michigan offices. According to the agreement, DTI would pay Kellner Software 10,000 Euros per month for four months in consideration for developing and granting DTI exclusive rights to certain software and source codes for DTI's Scanner MCS 48 ("Scanner") and camera calibration unit. Kellner Software was to develop the software and source codes over the four-month period between May and September 2006 and deliver the software by October 1, 2006. In partial performance of the agreement, DTI paid Kellner Software approximately 27,587 Euros ($35,000).

Kellner Software produced the software and source codes for the camera calibration unit, but not the software and codes for the Scanner. DTI requires the Scanner software and codes to conduct its business.

Kellner and Gerlach met in January 2007 and Kellner allegedly promised to deliver the Scanner software and source codes by February 1, 2007. Despite the promise, Kellner did not perform by February 1, 2007. The two met again in March 2007 when Kellner again promised to perform by March 30, 2007, but never did. Thereafter, Kellner indicated, for

the first time, that he would not continue developing the Scanner software and codes because he had not been paid in full. Kellner would only continue the development upon advance payment of 10,000 Euros per month. Kellner refused to say when he would complete and deliver the Scanner software. Kellner Software then sent DTI new written proposed agreements demanding from DTI additional performance terms the parties had not bargained for originally. DTI refused to accede to the new terms. Kellner Software never produced the Scanner software and source codes.

DTI attempted to sell its Scanners without the supporting software and codes, but was told by customers that the Scanner required "further upgrading and fine-tuning." Compl. ¶ 19. To accomplish this, DTI requires the software codes Keller Software originally agreed to provide.

Although the complaint contains allegations regarding the amount of damages DTI suffered as a result of the breach, its supplemental briefing provides more detailed information about its damages. The briefing contains an Affidavit from Dieter Gerlach that states that the Scanners were to be purchased by an client for $350,000 per machine. Dieter Aff. ¶ 5. The client would have purchased five Scanners, *id.* ¶ 4, for a total of $1.75 million. Dieter states that DTI's profit margin on the sale of the machines would have been 35 percent, for a total of $612,500 in net profits. *Id.* ¶ 7. Dieter further states that DTI had expended $700,000 building the Scanners, which it would have recouped had DTI been able to sell the Scanners with the software. *Id.* ¶ 12. To date, DTI has been unable to recoup any of the initial outlay for the machines. *Id.* ¶ 13.

## DISCUSSION

Fed. R. Civ. P. 55(b)(2) provides that a party may apply to the Court for a default judgment when its claim is not for a sum certain or a sum that can be made certain by

computation. The Court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. *Id.* Notice of the hearing to the defaulting party is not required when the defaulting party has not appeared personally or by representative. *Id.*

The Court will first address the issue of jurisdiction. In order to render a valid judgment, a court must have jurisdiction over the subject matter and the parties, and must act in a manner consistent with due process. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995). A district court must determine whether it has jurisdiction over a defendant who has not appeared in the case before entering a judgment by default against that defendant. Failure to do so may require reversal. *Griese v. Bauer Corp.*, No. 04-10220, 2006 WL 2360889, *2 (E.D. Mich. Aug. 15, 2006) (citing *Dennis Garberg and Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)).

The Court has jurisdiction over the subject-matter of the dispute pursuant to 28 U.S.C. § 1332 -- the parties are completely diverse and the amount in controversy is alleged to exceed $75,000. The Court also has personal jurisdiction over Kellner Software and Kellner. The Michigan long-arm statute provides for limited personal jurisdiction over corporations who transact any business in Michigan. Mich. Comp. Laws § 600.715(1). Since Kellner Software contracted to provide DTI with products in Michigan, the statute is satisfied. Due process considerations are also satisfied here. Kellner Software purposefully availed itself of the benefits and burdens of doing business in Michigan by contracting with a Michigan corporation for software and source codes to be delivered to Michigan. Additionally, DTI's action for breach of contract arises out of Kellner Software's conduct in Michigan. This is sufficient to alleviate any due process concerns. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997).

The Court also has jurisdiction over Kellner personally. The Michigan long-arm statute provides for limited personal jurisdiction over individuals who transact business in Michigan. Mich. Comp. Laws § 600.705(1). Kellner's conduct clearly falls under the statute as he was responsible for contracting with a Michigan corporation which called for performance of the contract in Michigan. Jurisdiction over Kellner also comports with due process. The Sixth Circuit has noted:

> While it is true that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation, we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (internal quotation marks and citations omitted). Here, it appears Kellner himself was actively and personally involved in creating the contract which gave rise to the lawsuit. It appears he had purposefully availed himself of Michigan and the reasonably foreseeable consequences of that availment. Therefore, the Court's exercise of jurisdiction over Kellner comports with due process.

Turning to the substance of DTI's claims, DTI has asserted two counts against Defendants: breach of contract and unjust enrichment. Considering the claim for breach of contract, the complaint is not clear as to which of the two defendants actually entered into the contract with DTI. The Court may reasonably infer, however, that the contract was between Kellner Software and DTI, and that Kellner was acting as an agent for Kellner Software in contracting with DTI. Otherwise, there would be no basis for suing Kellner Software for breach of contact. The Court finds that DTI has sufficiently asserted the

5

existence of a valid contract between it and Kellner Software, breach of the contract by Kellner Software, and damage to DTI as a proximate result of the breach. This is sufficient to establish an action for breach of contract against Kellner Software, and Kellner Software is liable for breach the contract.

The Court now turns to the liability of Kellner personally. DTI sued Kellner for breach of contract as well.[1] Under general agency principles, unless the parties agree otherwise, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract. *Finke v. Kirtland Cmty. Coll. Bd. of Trs.*, 359 F. Supp. 2d 593, 598 (E.D. Mich. 2005) (citing *Riddle v. Lacey & Jones*, 135 Mich. App. 241, 246 (1984)). Because the Court finds the existence of a contract between DTI and Kellner Software, and that Kellner acted on behalf of Kellner Software when he made the contract with DTI, the only way of holding Kellner personally liable for Kellner Software's breach is by piercing the corporate veil. *Cf. Riddle*, 135 Mich. App. at 247 ("As an agent for a disclosed principle, defendant cannot be held liable for his principal's failure to perform.").

Under Michigan law, where a corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored. *Needa Parts Mfg., Inc. v. PSNet, Inc.*, 635 F. Supp. 2d 642, 646 (E.D. Mich. 2009). "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentally of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics, Inc.*

---

[1] Although the complaint does not assert a claim specifically against Kellner, the allegations in the breach of contract count refer to "Defendants," which includes Kellner.

*v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Foodlands Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457 (1996)).

The complaint itself does not include any allegations that would support piercing the corporate veil, except those that refer to "Defendants" rather than "Kellner" or "Kellner Software" specifically, which suggest that DTI has a theory for holding Kellner personally liable. To establish a factual and legal basis for that theory, the Court asked DTI counsel at the motion hearing about its theory for piercing the corporate veil, and whether it could present sufficient evidence to justify piercing were the case to go to trial. In response, DTI claimed that Kellner had represented to DTI that Kellner's company, Kellner Software, could provide the Scanner software, knowing full well that neither he, nor his company, had the ability to produce the software. DTI counsel stated that this was a situation were Kellner was hiding behind the corporate veil of Kellner Software while making these misrepresentations to DTI. The Court finds that arguments of counsel show a sufficient basis for disregarding the corporate entity and holding Kellner personally liable for Kellner Software's breach of contract under the standard articulated above. Kellner and Kellner Software are jointly and severally liable for breach of the contract with DTI.

The Court turns now to DTI's claims for unjust enrichment against Defendants. Because the Court finds the allegations in the complaint sufficiently allege the existence of a contract covering the subject matter of the unjust enrichment claim, the Court will deny DTI's claim for unjust enrichment. Unjust enrichment is available when the defendant receives a benefit from the plaintiff and inequity results to the plaintiff from the defendant's retention of the benefit. *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993). In such cases, equity operates to imply a contract to prevent unjust enrichment. A contract is implied, however, only if there is no express contract covering the same subject matter.

*Id.* Because there was an express agreement between DTI and Kellner Software for the delivery of the Scanner software, there is no need to imply a contract in equity.

Having determined that Kellner Software and Kellner are liable for breach of contract, and that DTI is entitled to damages proximately caused by the breach, the Court must determine the appropriate measure of damages. Allegations in the complaint as to the amount of damages are not to be taken as true on a motion for default judgment. Instead, the Court must itself determine the appropriate amount. *Cf. Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotations and citations omitted).

In an action for breach of contract, the aggrieved party is entitled to the benefit of the bargain as set forth in the agreement. *Ferguson v. Pioneer State Mutual Ins. Co.*, 273 Mich. App. 47, 54 (2006). The proper measure of damages for a breach of contract is the "pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Id.* (internal quotation omitted). This amount may include loss of profits when they naturally arise from the breach or when they can reasonably be said to have been in the contemplation of the parties at the time they made the contract. *Lawrence v. Will Darrah & Assocs., Inc.*, 445 Mich. 1, 13 (1994) (internal quotation and citation omitted). Damages for lost profits are based on loss of *net* profits, not gross profits or total revenue. *Getman v. Mathews*, 125 Mich. App. 245, 250 (1983). An award of gross profits or total revenue would "grant the offended litigant a greater sum than he would have earned had the breach not occurred." *Lawton v. Gorman Furniture Corp.*, 90 Mich. App. 258, 267 (1979).

The Court finds that in this case, an award of lost profits, plus the amount of expenditures DTI made in reliance on the contract, but was unable to recoup by the sales, is an appropriate measure of damages. This amount will put DTI in the position it would have been in but for Defendants' breach. With respect to lost profits, it can be inferred from the allegations in the complaint that the loss was within the contemplation of the parties at the time they agreed to the terms of the contract. If Defendants were not on actual notice of the potential for lost profits, they should have reasonably foreseen that due to the nature of DTI's business, if Defendants failed to perform, DTI would be unable to sell its Scanners and realize a profit.

The Court now considers the specific amount of damages DTI is entitled to. The determination of lost profits does not require mathematical precision, but the amount must be subject to a reasonable degree of certainty and not based on mere conjecture or speculation. *Bonelli v. Volkswagen of America, Inc.*, 166 Mich. App. 483, 511 (1988). Even where they are difficult to calculate and speculative to some degree, lost profits are still allowed as a loss item. *Id.* The Court is satisfied that the affidavit of Seymour Mandell, in-house counsel for DTI, demonstrates a reasonable degree of certainty as to the profits DTI sought to gain had it been able to sell the five Scanners with the software. Mandell swore under oath that DTI sought was set to receive a 35 percent profit on the sale of its five Scanners for $350,000 each. Mandell Aff. ¶¶ 4-6. This would have resulted in a profit of $612,500. *Id.* ¶ 7. DTI is entitled to these lost profits.

Additionally, DTI expended $700,000 building the five Scanners it intended to sell, and has been unable to recoup any of this amount by selling the Scanners without the software. Id. ¶¶ 12-13. There is no market for the Scanners without the software. *Id.* ¶ 14. Had it

not been for Defendants breach, DTI likely would have been able to recoup these costs. DTI is entitled to recoup these costs from Defendants.

In its complaint and motion for default judgment, DTI also sought reimbursement for the attorney's fees it incurred in suing Defendants. At the hearing on the motion, the Court requested that DTI submit further briefing regarding its entitlement to these fees. DTI's supplemental brief included no argument or citation to authority that would support its claim for attorney's fees. Pursuant to local rule, a request for attorney's fees must be supported by a memorandum as to, among other things, the authority of the Court to make such an award. E.D. Mich. LR 54.1.2. DTI has provided no authority for why it can recover attorney's fees in a simple breach of contract action. It is well-settled in Michigan that recovery of attorney's fees is governed by the "American rule" that attorney's fees are generally not recoverable from the losing party unless recovery is expressly authorized by statute or court rule. *Haliw v. City of Sterling Heights*, 471 Mich. 700, 706-07 (2005); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (federal courts generally observe the American Rule that litigants pay their own attorney's fees); Fed. R. Civ. P. 54(d)(2)(B)(ii). In the absence of any support for its request for attorney's fees, the Court will not grant DTI's request at this time. If DTI's wishes to renew its request for attorney's fees, it may file a motion pursuant to E.D. Mich. LR 54.1.2.

The Court will grant DTI requests for costs. DTI must comply with E.D. Mich. LR 54.1 to collect costs.

**WHEREFORE** it is hereby **ORDERED** that DTI's motion for default judgment (docket no. 8) is **GRANTED in part.** The Court finds FA Kellner Software and Bernd Kellner jointly and severally liable to DTI for breach of contract. The Court will enter judgment in DTI's

favor in the amount of one million, three-hundred-twelve thousand, five-hundred dollars ($1,312,500). DTI's request for costs is granted.

**SO ORDERED.**

                                 s/Stephen J. Murphy, III
                                 STEPHEN J. MURPHY, III
                                 United States District Judge

Dated: February 24, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 24, 2010, by electronic and/or ordinary mail.

                                 Alissa Greer
                                 Case Manager